Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/09/2016 09:08 AM CST

MICHAEL J. WILCZEWSKI AND MICHELLE A. WILCZEWSKI,
APPELLANTS, v. CHARTER WEST NATIONAL BANK,
A NATIONAL BANKING ASSOCIATION, APPELLEE.

___ N.W.2d ___

Filed December 9, 2016.    No. S-15-1051.

1. **Arbitration and Award.** Arbitrability presents a question of law.
2. **Judgments: Jurisdiction.** A jurisdictional issue that does not involve a factual dispute presents a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Arbitration and Award: Federal Acts: Statutes: Contracts.** When determining whether an arbitration clause is governed by Nebraska's Uniform Arbitration Act or the Federal Arbitration Act, the initial question is whether the parties' contract evidences a transaction "involving commerce" as defined by the Federal Arbitration Act.
5. **Arbitration and Award: Federal Acts: States.** There does not have to be a multistate transaction for the Federal Arbitration Act to be applicable.
6. **Constitutional Law: Arbitration and Award: Federal Acts: States.** Because Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce where in the aggregate the economic activity in question would represent a general practice subject to federal control, the same must be said for application of the Federal Arbitration Act.
7. **Banks and Banking: Real Estate: States.** Generally, residential real estate lending affects interstate commerce.
8. **Deeds: Merger: Fraud.** The doctrine of merger does not apply where there has been fraud or mistake.
9. **Arbitration and Award: Dismissal and Nonsuit.** Where all of the contested issues are subject to arbitration, a court has discretion to

consider whether dismissal is more appropriate than staying a case pending arbitration.

10. **Courts: Pretrial Procedure: Time.** Because of the individualized nature of the administration of justice, trial courts must necessarily be given wide discretion to ensure that the goal of timely disposition of cases is reached in a manner consistent with fairness to all parties.

11. **Dismissal and Nonsuit: Appeal and Error.** In determining whether dismissal is more appropriate than staying a case, a court should consider the case's procedural history and the situation at the time of dismissal.

12. **Pretrial Procedure: Appeal and Error.** Discovery orders are not generally subject to interlocutory appeal because the underlying litigation is ongoing and the discovery order is not considered final.

Appeal from the District Court for Douglas County: W. Russell Bowie III, Judge. Affirmed.

John D. Stalnaker, Robert J. Becker, and Ashley A. Buhrman, of Stalnaker, Becker, & Buresh, P.C., for appellants.

Jeffrey A. Silver for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Per Curiam.

## I. INTRODUCTION

A bank foreclosed its loan on residential real estate and resold the property under a written contract containing an arbitration clause. The buyers appeal from an order compelling arbitration of their lawsuit against the bank. Because the Federal Arbitration Act (FAA)[1] extends to the full reach of Congress' Commerce Clause power and the bank's activity fell within its reach, the buyers' claims arising from the purchase of residential real estate were subject to the arbitration clause. And because we find no merit to the buyers' other arguments, we affirm the order compelling arbitration.

---

[1] 9 U.S.C. § 1 et seq. (2012).

## II. BACKGROUND

Michael J. Wilczewski and Michelle A. Wilczewski bought residential real estate from Charter West National Bank (Charter). The property is located in Douglas County, Nebraska. The purchase agreement for this transaction contained an arbitration clause.

### 1. Complaint

After the Wilczewskis learned that another bank had a superior lien against the real estate, they sued Charter for money damages. They asserted theories of fraudulent misrepresentation, negligent misrepresentation, common-law fraud, and quantum meruit or unjust enrichment. Their complaint alleged that despite Charter's knowledge of the other bank's lien, Charter represented the property would be conveyed free and clear of all liens. And the complaint alleged that without their knowledge, Charter "manipulated" the language of the deed to make it subject to liens of record.

But the Wilczewskis' complaint also alleged facts showing the full extent of Charter's activity leading to acquisition of its title and its later sale of the property to them. The following list summarizes the Wilczewskis' alleged facts:

• The prior owners' 2004 purchase of the real estate;
• the prior owners' 2004 purchase money loan from the other bank, secured by a deed of trust;
• the prior owners' 2006 loan from Charter, secured by another deed of trust;
• the prior owners' 2008 bankruptcy and the bankruptcy court's authorization of Charter's foreclosure in 2009;
• completion of a trustee's sale by Charter in 2009;
• Charter's issuance of a trustee's deed in foreclosure of the deed of trust, thereby conveying title to the real estate to itself as the purchaser;
• the October 2010 purchase agreement between Charter and the Wilczewskis; and
• the November 30, 2010, deed from Charter to the Wilczewskis.

## 2. MOTION TO COMPEL ARBITRATION

Charter filed a motion to compel arbitration pursuant to the purchase agreement. The arbitration clause provided: "Any controversy or claim between the parties to this Nebraska Purchase Agreement, its interpretation, enforcement or breach, including but not limited to claims arising from tort, shall be settled by binding arbitration . . . ."

The Wilczewskis objected to Charter's motion to compel arbitration on five grounds, which were later narrowed to two: (1) that the Wilczewskis' claims did not fall within the scope of the arbitration clause and (2) that the arbitration clause was void because it failed to comply with the notice provision under Nebraska's Uniform Arbitration Act (UAA).[2] In connection with the second ground, the Wilczewskis contended that the transaction did not involve interstate commerce and that thus, the FAA did not apply to their claims.

The district court initially denied Charter's motion without prejudice. Charter appealed this order, but we concluded that it was not a final, appealable order and dismissed the appeal.[3] Upon remand, the district court conducted an evidentiary hearing on the motion to compel arbitration.

## 3. DISTRICT COURT'S ORDER

After the evidentiary hearing, the district court sustained Charter's motion to compel arbitration. The court noted the strong public policy in favor of arbitration and construed the arbitration clause broadly. The court found that the clause was broad enough to encompass all of the Wilczewskis' claims. And, relying upon one of our decisions,[4] the court concluded that the agreement was a transaction "'involving commerce'"

---

[2] Neb. Rev. Stat. § 25-2601 et seq. (Reissue 2016).

[3] *Wilczewski v. Charter West Nat. Bank*, 290 Neb. 721, 861 N.W.2d 700 (2015).

[4] *Aramark Uniform & Career Apparel v. Hunan, Inc*., 276 Neb. 700, 757 N.W.2d 205 (2008).

as defined by the FAA and, therefore, that the FAA rather than Nebraska's UAA, applied. After finding that the FAA controlled, the court determined that the clause was not void for failure to comply with Nebraska's UAA notice requirement. Having sustained Charter's motion to compel arbitration, the court dismissed the case.

The Wilczewskis timely appealed, and we granted their petition to bypass the Nebraska Court of Appeals.

## III. ASSIGNMENTS OF ERROR

The Wilczewskis assign, reordered, that the district court erred in (1) finding that the FAA preempted the UAA, (2) finding that the arbitration clause applied to their claims, (3) dismissing the instant litigation instead of staying the matter pending arbitration, and (4) not allowing a "full opportunity for discovery on the issue of arbitrability."

## IV. STANDARD OF REVIEW

[1-3] Arbitrability presents a question of law.[5] Likewise, a jurisdictional issue that does not involve a factual dispute presents a question of law.[6] And when reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[7]

## V. ANALYSIS

At oral argument, Charter conceded that the purchase agreement did not conform to Nebraska's UAA. But it contended that the FAA applies and preempts the UAA. Thus, Charter's motion to compel cannot succeed unless the FAA applies to Charter's activity. Because this is the main issue before us, we address it first.

---

[5] *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d 538 (2010).

[6] *In re Interest of Octavio B. et al.*, 290 Neb. 589, 861 N.W.2d 415 (2015).

[7] See *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

## 1. Applicability of FAA

The Wilczewskis argue that Charter's activity here does not affect interstate commerce. The heart of their argument is that "[t]he subject Real Estate is located in Nebraska, the Wilczewskis are residents of Nebraska, and the claims made by the Wilczewskis against Charter . . . involve statements made in Nebraska by representatives of Charter . . . located in Nebraska."[8]

But that argument focuses on only part of Charter's activity. Charter was not a single-family occupant of residential real estate. Clearly, it would not have been engaged in selling the real estate but for its lending activity. Lending money secured by residential real estate plainly includes a risk of nonpayment and, in that event, the necessity of enforcing a lender's deed of trust. And where a nonjudicial foreclosure results in a lender's taking title to residential real estate, the subsequent sale of that real estate is sure to follow. In general, collection of a lender's loan is the only reason it would acquire title to residential real estate and the only reason it would sell the real estate to someone else, such as the Wilczewskis.

Thus, whether the FAA reaches Charter's activity depends upon how the activity is viewed. And to determine the answer to that question, we turn to the case law driven by decisions of the U.S. Supreme Court.

### (a) Reach of FAA

[4] The FAA provides at 9 U.S.C. § 2:

A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

---

[8] Brief for appellants at 26.

Therefore, when determining whether an arbitration clause is governed by Nebraska's UAA or the FAA, the initial question is whether the parties' contract evidences a transaction "'involving commerce'" as defined by the FAA.[9]

The U.S. Supreme Court has "interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power."[10] For this reason, the Court has consistently found that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause."[11]

A succession of U.S. Supreme Court cases leads to this inescapable conclusion. First, the Court held that the FAA is "based upon and confined to the incontestable federal foundations of 'control over interstate commerce and over admiralty.'"[12] Second, the Court determined that Congress had withdrawn the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.[13] Third, the Court's later decisions reiterated the FAA's applicability to matters of state

---

[9] *Aramark Uniform & Career Apparel v. Hunan, Inc., supra* note 4, 276 Neb. at 704, 757 N.W.2d at 209 (quoting 9 U.S.C. § 2).

[10] *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 156 L. Ed. 2d 46 (2003) (quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995)).

[11] *Perry v. Thomas*, 482 U.S. 483, 490, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987). See, also, *Citizens Bank v. Alafabco, Inc.*, *supra* note 10; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

[12] *Prima Paint v. Flood & Conklin*, 388 U.S. 395, 405, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (quoting H.R. Rep. No. 96, 68th Cong. 1st Sess. 1 (1924), and S. Rep. No. 536, 68th Cong., 1st Sess. 3 (1924)).

[13] *Southland Corp. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

law.[14] Finally, the Court expressly rejected the argument that the FAA's commerce language "carv[ed] out an important statutory niche in which a State remains free to apply its antiarbitration law or policy."[15] The Court emphasized that "the word 'involving' is broad and is indeed the functional equivalent of 'affecting.'"[16] Thus, the Court settled the question of the reach of the FAA—it extends to the full reach of the Commerce Clause.[17] And in doing so, the Court read the FAA as insisting that the transaction in fact involved interstate commerce, even if the parties did not contemplate an interstate commerce connection.[18] Thus, to summarize, in the words of a case note criticizing the U.S. Supreme Court's decision, the Court "[took] the final step in the federalization of the FAA."[19]

This progression of cases demonstrates that the scope of the FAA is well settled at the federal level as having the same reach as Congress' Commerce Clause power. And, as the district court noted, this court previously recognized the U.S. Supreme Court's interpretation of the FAA's "expansive scope" and concluded that the "FAA's reach is as broad as Congress' Commerce Clause authority."[20]

---

[14] See, e.g., *Perry v. Thomas, supra* note 11 (FAA preempted California statute providing that actions for collection of wages could be maintained without regard to existence of private arbitration agreement); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985) (FAA required federal courts to compel arbitration of pendent arbitrable claims).

[15] *Allied-Bruce Terminix Cos. v. Dobson, supra* note 10, 513 U.S. at 273.

[16] *Id*., 513 U.S. at 273-74.

[17] *Allied-Bruce Terminix Cos. v. Dobson, supra* note 10.

[18] *Id.*

[19] Scott R. Swier, Note, *The Tenuous Tale of the Terrible Termites: The Federal Arbitration Act and the Court's Decision to Interpret Section Two in the Broadest Possible Manner:* Allied-Bruce Terminix Companies, Inc. v. Dobson, 41 S.D. L. Rev. 131, 159 (1996).

[20] *Aramark Uniform & Career Apparel v. Hunan, Inc., supra* note 4, 276 Neb. at 705-06, 757 N.W.2d at 210.

[5,6] For these reasons, there does not have to be a multi-state transaction for the FAA to be applicable. Congress has the power to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce.[21] Because "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect upon interstate commerce'" where "in the aggregate the economic activity in question would represent 'a general practice . . . subject to federal control,'"[22] the same must be said for application of the FAA.

### (b) Application to Resale
### After Foreclosure

Given the Court's explanation that the Commerce Clause reaches economic activity that, in the aggregate, would represent a general practice subject to federal control, it seems clear to us that Charter's activities at issue fell within that realm. Charter engaged in lending money secured by residential real estate. As the Wilczewskis' complaint makes clear, Charter's sale of the subject real estate was not an isolated transaction from one homeowner to another. Rather, the resale to the Wilczewskis was the direct result of Charter's loan to the prior owners, its foreclosure of its deed of trust, its acquisition of title at the trustee's sale, and the necessity of selling the real estate to recover the moneys lent to the prior owners.

As the U.S. Supreme Court said, "No elaborate explanation is needed to make evident the broad impact of commercial lending on the national economy or Congress' power to regulate that activity pursuant to the Commerce Clause."[23]

---

[21] See *Gonzales v. Raich*, 545 U.S. 1, 125 S. Ct. 2195, 162 L. Ed. 2d 1 (2005).

[22] *Citizens Bank v. Alafabco, Inc., supra* note 10, 539 U.S. at 56-57 (quoting *Mandeville Farms v. Sugar Co.*, 334 U.S. 219, 68 S. Ct. 996, 92 L. Ed. 1328 (1948)).

[23] *Id.*, 539 U.S. at 58.

The Court has also said, "[B]anking and related financial activities are of profound local concern. . . . Nonetheless, it does not follow that these same activities lack important interstate attributes."[24]

[7] It makes no difference that the purpose of Charter's loan to the prior owners was to finance residential real estate. Here also, no elaborate explanation is needed to make evident the broad impact of residential real estate lending on the national economy. The nationwide impact of residential real estate lending was a central focus of the Housing and Economic Recovery Act of 2008,[25] which Congress passed in response to a national financial crisis.[26] Generally, residential real estate lending affects interstate commerce. And the sale to the Wilczewskis was merely the last step of Charter's loan, foreclosure, acquisition of title, and resale of its security.

To be clear, it is not the parties' legal status that brings the transaction within the scope of the Commerce Clause. In other words, whether Charter derives its banking powers from a federal- or state-issued charter makes no difference in our analysis.

Similarly, other tangential details associated with the transaction do not control. Charter's brief sets forth a litany of multistate connections regarding homeowner's insurance, title insurance, document transmission via the Internet, issuance of a cashier's check from another state, use of the Federal Reserve wire system, checks drawn on out-of-state bank accounts, and the like. The district court relied, at least in part, on these aspects. But they are only incidental—they do not define the

---

[24] *Lewis v. BT Investment Managers, Inc*., 447 U.S. 27, 38, 100 S. Ct. 2009, 64 L. Ed. 2d 702 (1980).

[25] 12 U.S.C. § 4501 et seq. (2012).

[26] See *Pagliara v. Federal Home Loan Mortgage Corp.*, No. 1:16-cv-337 (JCC/JFA), 2016 WL 4441978 (E.D. Va. Aug. 23, 2016) (memorandum opinion).

scope of Charter's activity. And we are focused on Charter's program or activity of residential real estate lending, which included the sale to the Wilczewskis.

### (c) Distinguishing Other
### Courts' Decisions

We are aware that a few courts have declined to compel arbitration of disputes arising from individual residential real estate transactions.[27] However, we believe the situation before us is significantly different. None of the cases declining to compel arbitration involved a comprehensive practice or activity of lending money on residential real estate, enforcing liens, acquiring title, and reselling. The other cases merely addressed individual sales of residential real estate. As we have already explained, Charter's activity is that of a lender of money on residential real estate, which culminated in the sale to the Wilczewskis. We need not decide and do not suggest whether the FAA applies to a simple contract for the sale of residential real estate.

### 2. Applicability of
### Arbitration Clause

Having found that the FAA applies to this purchase agreement, we must now consider whether all of the Wilczewskis'

---

[27] See, *Garrison v. Palmas Del Mar Homeowners Ass'n, Inc.*, 538 F. Supp. 2d 468 (D.P.R. 2008) (FAA generally does not apply to residential real estate transactions having no substantial or direct connection to interstate commerce); *Saneil v. Robards*, 289 F. Supp. 2d 855 (W.D. Ky. 2003) (agreement to sell real estate between in-state buyer and out-of-state seller did not involve interstate commerce); *SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059 (N.D. Cal. 2002) (agreement to sell real estate between in-state buyer and out-of-state seller did not involve interstate commerce); *Cecala v. Moore*, 982 F. Supp. 609 (N.D. Ill. 1997) (lack of out-of-state transactions incident to sale of real estate evidenced no interstate commerce); *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 730 S.E.2d 312 (2012) (development of residential real estate was inherently intrastate transaction not affecting interstate commerce).

claims are covered by the agreement's arbitration clause. We have already quoted its broad language.

The Wilczewskis argue that their claims do not fall within the scope of the arbitration clause. They assert that the claims for misrepresentation and fraud relate to events leading up to the parties' entering into the agreement, but do not involve any controversies arising out of "'interpretation, enforcement or breach'" of the agreement.[28] Further, the Wilczewskis cite to our decision in *Washa v. Miller*[29] for the proposition that a cause of action for unjust enrichment is only recognized in the absence of an agreement between the parties. They maintain that their claims for unjust enrichment could not have arisen under the agreement and, therefore, are not governed by the arbitration clause.

Yet, as Charter points out, the Wilczewskis themselves cite the agreement within the factual portion of their complaint and, again, in each of their four separate theories of recovery. The Wilczewskis allege that they were improperly induced to enter into the agreement. In so doing, they made the agreement a relevant issue and an essential piece of the proceeding. Accordingly, we agree with the district court that based upon the Wilczewskis' complaint, their claims came within the scope of the arbitration clause. And the Wilczewskis have not pointed to any language of the purchase agreement suggesting that the parties intended to withhold from arbitration the claim of fraud in inducement of the entire contract.[30]

[8] Next, the Wilczewskis argue that under the doctrine of merger, the agreement merged into the deed and, therefore,

---

[28] Brief for appellants at 11.

[29] *Washa v. Miller*, 249 Neb. 941, 546 N.W.2d 813 (1996).

[30] See *Prima Paint v. Flood & Conklin, supra* note 12.

the arbitration clause is ineffective. We have held that "'[t]he doctrine of merger does not apply where there has been fraud or mistake.'"[31] Because the Wilczewskis were claiming common-law fraud and fraudulent and negligent misrepresentation, the doctrine of merger did not apply. We need not decide, as several other states' courts have done, whether the merger doctrine does not apply for other reasons.[32]

### 3. DISMISSAL OF PENDING CASE

The Wilczewskis allege that even if their claims were subject to arbitration, the court should have stayed the case pending arbitration rather than dismissing it.

The FAA provides:

> If any suit . . . be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . *shall* on application of one of the parties *stay* the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."[33]

Currently, the federal circuit courts are split on the issue of whether a stay is mandatory once a court compels arbitration pursuant to this section. However, there is a slight majority of the courts that allow dismissal, despite the mandatory language of the statute, where all the contested issues between the parties will be resolved by arbitration and the parties will

---

[31] *Newton v. Brown*, 222 Neb. 605, 616, 386 N.W.2d 424, 432 (1986) (quoting *Bibow v. Gerrard*, 209 Neb. 10, 306 N.W.2d 148 (1981)). See, also, *Purbaugh v. Jurgensmeier*, 240 Neb. 679, 483 N.W.2d 757 (1992).

[32] See, e.g., *Thomas v. Sloan Homes, LLC*, 81 So. 3d 309 (Ala. 2011); *Drees Co. v. Osburg*, 144 S.W.3d 831 (Ky. App. 2003); *Homeowners Ass'n v. Pilgrims Landing, LC*, 221 P.3d 234 (Utah 2009).

[33] 9 U.S.C. § 3 (emphasis supplied).

not be prejudiced by dismissal.[34] The U.S. District Court for the District of Nebraska, in reviewing similar actions, has also recognized that a court has discretion to dismiss a case rather than stay pending arbitration.[35]

[9] While we have not yet issued an opinion specifically addressing this issue, we have previously affirmed an order of the district court that compelled arbitration under the FAA and dismissed the action.[36] Upon reviewing the federal court decisions and with our own understanding of a court's inherent authority to manage its docket, we are persuaded that where all of the contested issues are subject to arbitration, a court has discretion to consider whether dismissal is more appropriate than staying a case pending arbitration.

[10,11] Because of the individualized nature of the administration of justice, trial courts must necessarily be given wide discretion to ensure that the goal of timely disposition of cases is reached in a manner consistent with fairness to all parties.[37] In determining whether dismissal is more appropriate than staying a case, a court should consider

---

[34] See, *Johnmohammadi v. Bloomingdale's, Inc*., 755 F.3d 1072 (9th Cir. 2014); *Green v. SuperShuttle Intern., Inc.*, 653 F.3d 766 (8th Cir. 2011); *Choice Hotels Intern. v. BSR Tropicana Resort*, 252 F.3d 707 (4th Cir. 2001); *Bercovitch v. Baldwin School, Inc*., 133 F.3d 141 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992). But see, *Katz v. Cellco Partnership*, 794 F.3d 341 (2d Cir. 2015); *Halim v. Great Gatsby's Auction Gallery, Inc*., 516 F.3d 557 (7th Cir. 2008); *Lloyd v. Hovensa, LLC.*, 369 F.3d 263 (3d Cir. 2004); *Adair Bus Sales, Inc. v. Blue Bird Corp*., 25 F.3d 953 (10th Cir. 1994).

[35] See, *Herd Co. v. Ernest-Spencer, Inc*., No. 8:09CV397, 2010 WL 76371 (D. Neb. Jan. 5, 2010) (unpublished opinion) (citing *Kalinski v. Robert W. Baird & Co., Inc.*, 184 F. Supp. 2d 944 (D. Neb. 2002)).

[36] See *State ex rel. Bruning v. R.J. Reynolds Tobacco Co*., 275 Neb. 310, 746 N.W.2d 672 (2008), *abrogated on other grounds, Kremer v. Rural Community Ins. Co., supra* note 5.

[37] *Talkington v. Womens Servs.*, 256 Neb. 2, 588 N.W.2d 790 (1999).

the case's procedural history and the situation at the time of dismissal.[38]

The Wilczewskis allege that dismissal is inappropriate in this case because it is possible their claims may not be heard in arbitration. Specifically, they contend that if the case is dismissed and they submit a demand for arbitration, Charter "may assert [the Wilczewskis] are out of time to arbitrate. This litigation has been pending since April 9, 2014. To allow procedural delays to result in the Wilczewskis being banned from pursuing redress in any forum would be unjust."[39]

Under different circumstances, that might be true. But, here, the district court has already issued an order compelling arbitration at Charter's request. In making that request, Charter waived its right to assert that its own demand was untimely. And the Wilczewskis have not directed our attention to anything in the evidence that would suggest otherwise. Thus, the Wilczewskis' concern is unfounded. Accordingly, the district court did not abuse its discretion in dismissing the case.

### 4. Denial of Full Discovery

In appealing from the district court's October 16, 2015, order sustaining Charter's motion to compel arbitration, the Wilczewskis have also attempted to appeal from the district court's August 17 order granting in part and denying in part their request for full discovery.

[12] In this appeal, we clearly lack jurisdiction of the discovery order. Discovery orders are not generally subject to interlocutory appeal because the underlying litigation is ongoing and the discovery order is not considered final.[40] Of course, we have held that an order compelling arbitration is

---

[38] See *id*.

[39] Brief for appellants at 29.

[40] *Furstenfeld v. Pepin*, 287 Neb. 12, 840 N.W.2d 862 (2013).

a final order.[41] And while it is possible that arbitrability may include an issue of fact, that is not the situation here. All of the pertinent facts derive from the Wilczewskis' complaint. For that reason, we express no opinion whether there are any circumstances under which a discovery order regarding arbitrability would fall within the scope of an appeal from an order compelling arbitration.

## VI. CONCLUSION

Because the purchase agreement was governed by the FAA and the Wilczewskis' claims were subject to the arbitration clause, we conclude that it was necessary to sustain Charter's motion to compel arbitration. We also conclude that the district court had discretion to dismiss rather than stay the case and that the district court did not abuse its discretion in doing so. And we lack jurisdiction to address the district court's order denying full discovery. For these reasons, we affirm the order of the district court.

AFFIRMED.

---

[41] See *Kremer v. Rural Community Ins. Co., supra* note 5.