Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/20/2017 09:13 AM CDT

- 356 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

Frohberg Electric Company, Inc., a Nebraska corporation,
appellee, v. Grossenburg Implement, Inc., a Nebraska
corporation, and Kiehm Construction, Inc.,
a Minnesota corporation, appellants.

___ N.W.2d ___

Filed July 28, 2017.    No. S-16-987.

1. **Contracts.** The meaning of a contract and whether a contract is ambiguous are questions of law.
2. **Arbitration and Award.** Arbitrability presents a question of law.
3. **Judgments: Appeal and Error.** When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.
4. **Arbitration and Award: Contracts: Appeal and Error.** Where an issue concerns the formation or existence of an arbitration agreement and not its validity, enforceability, or scope, an appellate court applies state law.
5. **Arbitration and Award: Federal Acts: Contracts.** The Federal Arbitration Act's application is triggered only if a contract involving interstate commerce actually contains an arbitration clause.
6. **Arbitration and Award: Federal Acts: Contracts: States.** In a contract involving interstate commerce, the equal-treatment principle of the Federal Arbitration Act applies in determining whether a valid arbitration agreement exists: States may not apply a state rule discriminating against arbitration and are required to place arbitration agreements on equal footing with all other contracts.
7. **Contracts.** In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.
8. ____. A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.
9. **Contracts: Words and Phrases.** A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings.

10. **Arbitration and Award: Federal Acts: Contracts.** If a contract containing an arbitration clause involves interstate commerce, the Federal Arbitration Act governs the contract.
11. **Contracts: States: Words and Phrases.** Contracts involving interstate commerce include contracts for services between parties of different states.
12. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Wayne County: JAMES G. KUBE, Judge. Reversed and remanded with directions.

Timothy Engler, of Rembolt Ludtke, L.L.P., for appellants.

David E. Copple and Michelle M. Schlecht, of Copple, Rockey, McKeever & Schlecht, P.C., L.L.O., for appellee.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, STACY, KELCH, and FUNKE, JJ.

CASSEL, J.

## INTRODUCTION

This is an appeal from an order denying a motion to compel arbitration of a construction dispute. A subcontractor sued the project's owner and general contractor, which in turn sought to compel arbitration. The appeal turns on whether the subcontract effectively incorporated a mandatory arbitration clause from the general contract, thereby mandating the subcontractor to arbitrate. Because we conclude that it did, we reverse, and remand with directions.

## BACKGROUND

### PARTIES AND GOVERNING CONTRACTS

Grossenburg Implement, Inc. (Owner), a Nebraska corporation, executed a standard form contract (the general

- 358 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

contract) with Kiehm Construction, Inc. (Contractor), a Minnesota corporation, for the construction of several structures on Owner's property in Wayne County, Nebraska. The general contract included a mandatory arbitration clause for "any Claim . . . not resolved by mediation pursuant to [the general conditions]."

Contractor then subcontracted with Frohberg Electric Company, Inc. (Subcontractor), a Nebraska corporation, to provide electrical services and materials in constructing the structures. The subcontract referenced the existence of the general contract and stated, "Contractor has made available to . . . Subcontractor all of the above documents, and . . . the above have been carefully examined by . . . Subcontractor."

The general contract was also referenced in several sections of the subcontract, including one (Section 11) in which Subcontractor agreed "[t]o be bound to . . . Contractor by the terms of the General Contract" and "to conform to and to comply with the provisions of the General Contract." Another section (Section E), under the heading "The Contractor Agrees as Follows," provided: "If arbitration of disputes is provided for in the General Contract, any dispute arising between . . . Contractor and . . . Subcontractor under this Subcontract, including the breach thereof, shall be settled by arbitration in the manner provided for in the General Contract."

## LOWER COURT PROCEEDINGS

After Subcontractor provided services pursuant to the subcontract, a dispute arose concerning the payment owed to Subcontractor. Subcontractor then obtained a construction lien against Owner's property and later filed a complaint against Owner and Contractor to obtain a judgment and foreclose on the construction lien.

Owner and Contractor jointly moved to dismiss the complaint or, in the alternative, to compel arbitration pursuant to the terms of the subcontract and the general contract. They

alleged that the subcontract included specific provisions in Section 11 and Section E which incorporated the alternative dispute resolution clauses from the general contract and general conditions signed by Owner and Contractor. Thus, they argued that the matter should be settled by arbitration as provided in those documents.

The district court overruled the motion and specifically held that the terms of the subcontract did not bind Subcontractor to the dispute resolution provisions of the general contract or general conditions. The court noted that the only provision specifically purporting to bind the parties to alternative dispute resolution was under the subcontract section titled "The Contractor Agrees as Follows" and not contained within the other sections, "The Subcontractor Agrees as Follows" or "The Contractors and Subcontractors Agree as Follows." Accordingly, the court found that Subcontractor did not agree to that provision by the express terms of the subcontract.

The court also found that the provision of Section 11 in which Subcontractor agreed "[t]o be bound to . . . Contractor by the terms of the General Contract" was vague as to whether it applied to disputes between Subcontractor and Owner or between Subcontractor and Contractor. Since the general contract spoke only to disputes between Owner and Contractor, the court found that the general contract language was inconsistent with the subcontract and that the language of the subcontract should govern. Because it had already determined that the express terms of the subcontract did not bind Subcontractor to the dispute resolution process within the general contract, the court concluded that there was no arbitration agreement.

Owner and Contractor appealed, and we moved the case to our docket.[1]

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2016).

## ASSIGNMENTS OF ERROR

Owner and Contractor assign, reordered, restated, and combined, that the district court erred in (1) construing the subcontract and the general contract incorporated by reference and (2) denying their motion to compel arbitration and stay the action pending arbitration.

## STANDARD OF REVIEW

[1-3] The meaning of a contract and whether a contract is ambiguous are questions of law.[2] Likewise, arbitrability presents a question of law.[3] When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions.[4]

## ANALYSIS

Owner and Contractor advance two main arguments on appeal. They argue that the subcontract incorporated the dispute resolution process outlined in the general contract and general conditions with clear and unambiguous language set forth in both Section E and Section 11 of the subcontract. They also argue that the Federal Arbitration Act (FAA)[5] applied to the subcontract and general contract and that under the express provisions of the FAA, their motion to compel arbitration should have been sustained.

[4-6] We first address whether the subcontract unambiguously incorporated the terms of the general contract such that the claims in the instant case were subject to a binding arbitration clause. Because this issue concerns the formation

---

[2] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist.*, 291 Neb. 642, 868 N.W.2d 67 (2015).

[3] *Wilczewski v. Charter West Nat. Bank*, 295 Neb. 254, 889 N.W.2d 63 (2016).

[4] *Id.*

[5] 9 U.S.C. § 1 et seq. (2012).

- 361 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

or existence of an arbitration agreement and not its validity, enforceability, or scope, we apply state law.[6] The FAA's application is triggered only if a contract involving interstate commerce actually contains an arbitration clause.[7] But, the FAA's equal-treatment principle applies in determining whether a *valid* arbitration agreement exists: States may not apply a state rule discriminating against arbitration and are required to place arbitration agreements on equal footing with all other contracts.[8]

---

[6] See *David Fiala, Ltd. v. Harrison*, 290 Neb. 418, 860 N.W.2d 391 (2015). See, also, *Southland Corp. v. Keating*, 465 U.S. 1, 19-20, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984) (noting "lower courts generally look to state law regarding questions of formation of the arbitration agreement under [9 U.S.C.] § 2 [(1976)], . . . which is entirely appropriate so long as the state rule does not conflict with the policy of § 2") (citations omitted); *Washington Mut. Finance Group, LLC v. Bailey*, 364 F.3d 260, 264 (5th Cir. 2004) (holding "in determining whether the parties agreed to arbitrate a certain matter, courts apply the contract law of the particular state that governs the agreement"); *ISC Holding AG v. Nobel Biocare Investments N.V.*, 351 Fed. Appx. 480 (2d Cir. 2009) (applying state contract law where contract was ambiguous as to whether agreement to arbitrate existed).

[7] See *id.* See, also, *CardioNet, Inc. v. CIGNA Health Corp.*, 751 F.3d 165, 173 (3d Cir. 2014) ("while the FAA 'embodies a strong federal policy in favor of arbitration, . . . the duty to arbitrate remains one assumed by contract.' . . . Thus, the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. . . . Otherwise, the plain language of the contract controls") (citations omitted); *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014) (determining that presumption of arbitrability does not apply "before it is determined whether there is a 'validly formed and enforceable arbitration agreement'"); *Paul Revere Variable Annuity Ins. v. Kirschhofer*, 226 F.3d 15 (1st Cir. 2000) (determining that federal preference for arbitration does not come into play where right to arbitrate is unclear or ambiguous).

[8] See *Kindred Nursing Centers Ltd. v. Clark*, ___ U.S. ___, 137 S. Ct. 1421, 197 L. Ed. 2d 806 (2017).

- 362 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

[7,8] In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous.[9] A contract written in clear and unambiguous language is not subject to interpretation or construction and must be enforced according to its terms.[10]

## Section E

Owner and Contractor argue that the district court improperly focused on the assigned headings of the subcontract when it construed Section E as agreed to only by Contractor. Owner and Contractor allege that Section E unambiguously incorporated the dispute resolution process provided for in the general contract and that it was binding upon both Contractor and Subcontractor. We agree.

As stated above, Section E provided, "If arbitration of disputes is provided for in the General Contract, any dispute arising between . . . Contractor and . . . Subcontractor under this Subcontract, including the breach thereof, shall be settled by arbitration in the manner provided for in the General Contract." But, because the provision was included under the section heading "The Contractor Agrees as Follows" and not under either the heading "The Subcontractor Agrees as Follows" or the heading "The Contractors and Subcontractors Agree as Follows," the district court determined that *Subcontractor's* claims were not subject to arbitration. By purportedly enforcing the express terms of the contract, the court concluded that Section E was binding on Contractor only. In doing so, the district court adopted a restrictive interpretation of the section.

[9] While two conflicting interpretations of Section E can be advanced, only one of them is reasonable. The district court's restrictive interpretation disregards Section E's broad language and effectively rewrites the section by limiting its

---

[9] *Facilities Cost Mgmt. Group v. Otoe Cty. Sch. Dist., supra* note 2.

[10] *Id.*

- 363 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

applicability to those disputes complained of by Contractor and not Subcontractor. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two *reasonable* but conflicting interpretations or meanings.[11] Because the restrictive interpretation of Section E was unreasonable, Section E was unambiguous and should have been enforced by its express terms.

Consequently, both Contractor and Subcontractor agreed to Section E despite the section heading. For two reasons, we read that heading as suggesting a *mutual promise* rather than a unilateral commitment. First, the plain meaning of the term "agrees" contemplates a mutual understanding with another.[12] And because Subcontractor was the only other party to the subcontract, it was the only one with which Contractor could agree. Second, because other provisions under the same heading, including an integration clause, are ones that are clearly intended to apply to both parties, the heading implicitly declares that "Contractor Agrees" *with* Subcontractor.

Even under the heading "The Contractor Agrees as Follows," the express terms of Section E included a reciprocal agreement to arbitrate all disputes between Contractor and Subcontractor arising from the subcontract pursuant to the terms of the general contract. Because Subcontractor's claims arose from the subcontract, they were subject to this agreement.

### Incorporated Arbitration Agreement

Section E expressly provided for the settlement of disputes between Contractor and Subcontractor by "arbitration *in the*

---

[11] *Id.*

[12] "Agree," Oxford English Dictionary Online, http://www.oed.com/view/ Entry/4146 (last visited July 20, 2017) (defining term as "[t]o accede, consent; to come to an agreement with another").

- 364 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

*manner provided* for in the General Contract." Therefore, we must clarify what the general contract provides regarding the "manner" of arbitration.

The general contract provides, "For any Claim subject to, but not resolved by mediation pursuant to Section 15.3 of [the general conditions], the method of binding dispute resolution shall be . . . Arbitration pursuant to Section 15.4 of [the general conditions]." And, § 15.3.1 of the general conditions provides, "Claims, disputes, or other matters in controversy arising out of or related to the Contract except those waived as provided for in Sections 9.10.4, 9.10.5, and 15.1.6 shall be subject to mediation as a condition precedent to binding dispute resolution." Thus, a claim must be subject to mediation and the mediation of the dispute must be unsuccessful before the claim is subject to binding arbitration.

The sweeping language of § 15.3.1 subjects all claims arising out of the contract, except those waived pursuant to the general conditions, to mediation as a condition precedent to binding dispute resolution. Section 9.10.4 waived certain claims by Owner after it made final payment. Section 9.10.5 similarly waived those claims by Contractor and subcontractors after their acceptance of final payment. Finally, Section 15.1.6 waived all claims for consequential damages.

Here, Owner did not make a final payment and, necessarily, Subcontractor did not accept a final payment. Subcontractor's claims arose out of a perceived breach of the contract, and Subcontractor did not seek consequential damages. Therefore, Subcontractor's claims did not fall within one of the categories of claims waiving mediation pursuant to the general conditions. Because Subcontractor's claims all arose out of the contract, the claims were subject to the dispute resolution process mandated by § 15.3.1.

- 365 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
297 NEBRASKA REPORTS
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

APPLICABILITY OF FAA

[10] If a contract containing an arbitration clause involves interstate commerce, the FAA governs the contract.[13] We have already determined that the subcontract unambiguously incorporated the arbitration agreement, with its requirement for mediation as a condition precedent, from the general contract and general conditions. Accordingly, we now consider whether the subcontract involved interstate commerce, thereby triggering the applicability of the FAA.

[11] Contracts involving interstate commerce include contracts for services between parties of different states.[14] Here, the subcontract undeniably met this definition. The subcontract was for the provision and installation of electrical services and materials in the buildings constructed pursuant to the general contract. Thus, it was a contract for services. And it was clearly between parties of different states: Contractor is a Minnesota corporation, and Subcontractor is a Nebraska corporation. Therefore, the FAA applied and the agreement is presumed valid, irrevocable, and enforceable.[15]

Because the subcontract's arbitration clause is governed by the FAA, the action should have been stayed until arbitration was had in accordance with the terms of the agreement.[16] Section 15.3.1 mandated mediation as a condition precedent to binding arbitration. At oral argument, it was conceded that mediation had not been attempted. Therefore, we must reverse the district court's decision and remand the cause with directions that the court enter an order compelling arbitration in the manner provided for in the general contract. That is, the parties must attempt to resolve their dispute in mediation and then

---

[13] *David Fiala, Ltd. v. Harrison, supra* note 6.

[14] *Id.*

[15] See 9 U.S.C. § 2 (2012).

[16] See 9 U.S.C. § 3 (2012).

- 366 -

Nebraska Supreme Court Advance Sheets
297 Nebraska Reports
FROHBERG ELEC. CO. v. GROSSENBURG IMPLEMENT
Cite as 297 Neb. 356

submit their dispute to arbitration in the event that mediation is unsuccessful.

[12] Having found reversible error, we do not address Owner and Contractor's remaining arguments. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[17]

## CONCLUSION

Because the subcontract included a mutually agreed-to arbitration clause governed by the FAA and Subcontractor's claims were subject to the clause, we conclude that the motion to compel arbitration in the manner provided for in the general contract should have been sustained. In other words, the parties should have been required to attempt mediation and, if that failed, to proceed to arbitration. We reverse the district court's order and remand the cause with directions that the court enter an order staying the action and compelling arbitration pursuant to the agreement.

Reversed and remanded with directions.

---

[17] *Flores v. Flores-Guerrero*, 290 Neb. 248, 859 N.W.2d 578 (2015).