730 S.E.2d 312

**Fred BRADLEY, Respondent,**

**v.**

**BRENTWOOD HOMES, INC., Brentwood Homes–Limehouse, LLC, Brentwood Homes–The Retreat at Johns Island, LLC, Brentwood Homes of South Carolina, Inc., Brentwood Homes of North Carolina, Inc., Brentwood Homes of Myrtle Beach, Inc., Brentwood Homes of Low Country, Inc., Brentwood Homes of Fort Mill, Inc., Brentwood Homes of Beaufort–Bluffton, Inc., Harris Street, LLC, Crescent Homes of SC, Inc., Brentwood Homes Incorporated, a Georgia Corporation, Appellants.**

No. 27143.

No. 2010–163350.

Supreme Court of South Carolina.

Heard May 22, 2012.

Decided July 11, 2012.

448

Robert T. Lyles, Jr., of Charleston, for Appellants.

W.W. DesChamps, Jr. and William Wayne DesChamps, III, both of Myrtle Beach, SC, for Respondent.

Justice BEATTY.

Brentwood Homes, Inc. and the other appellants (collectively "Brentwood Homes") appeal the circuit court's order denying a motion to stay the proceedings and compel arbitration in

a lawsuit filed by Fred Bradley that arose out of his purchase of a home in South Carolina. Although Brentwood Homes concedes the Home Purchase Agreement does not meet the technical requirements of the South Carolina Uniform Arbitration Act (the "UAA"),[1] it claims the court erred in denying the motion because the transaction involved interstate commerce and, thus, was subject to the Federal Arbitration Act ("FAA").[2] We affirm.

## I. Factual/Procedural History

On January 31, 2007, Bradley and Brentwood Homes entered into a Home Purchase Agreement (the "Agreement") for the purchase of a home located in North Myrtle Beach, South Carolina. In the Agreement, Bradley and his wife were designated as the purchasers and Brentwood Homes was designated as the seller. Pursuant to the Agreement, Bradley agreed to purchase a completed dwelling wherein Brentwood Homes acted as a seller of the completed dwelling rather than as a contractor for the construction of the dwelling.[3] The closing of the home took place on March 2, 2007.

On July 31, 2009, Bradley initiated a lawsuit against Brentwood Homes in which he alleged numerous construction defects in the dwelling. In his Complaint, Bradley identified causes of action for fraud, negligence, and breach of implied warranty.

After six months of discovery requests by Bradley, Brentwood Homes filed an Amended Answer and Counterclaim on February 5, 2010. In this responsive pleading, Brentwood Homes claimed the circuit court did not have jurisdiction to rule on Bradley's lawsuit as the Agreement provided for

---

1. S.C.Code Ann. §§ 15–48–10 to –240 (2005 & Supp.2011).

2. 9 U.S.C.A. §§ 1–16 (2009 & Supp.2012).

3. Section 22H states:
 It is understood that Purchaser is buying a completed dwelling and that Seller is not acting as a contractor for Purchaser in the construction of a dwelling. Purchaser will acquire no right, title or interest in the dwelling except the right and obligation to purchase the same in accordance with the terms of this Agreement upon the completion of the dwelling.

arbitration. Brentwood Homes concurrently filed a motion to stay the proceedings and compel arbitration.

In support of this motion, Brentwood Homes referenced subsection 14G in the Agreement, which provides in relevant part:

> **Mandatory Binding Arbitration.**[4] Purchaser and Seller each agree that, to the maximum extent allowed by law, they desire to arbitrate all disputes between themselves. The list of disputes which shall be arbitrated in accordance with this paragraph include, but are not limited to: (1) any claim arising out of Seller's construction of the home, (2) Seller's performance under any Punch List or Inspection Agreement, (3) Seller's performance under any warranty contained in this Agreement or otherwise, and (4) any matters as to which Purchaser and Seller agree to arbitrate.

Alternatively, Brentwood Homes claimed that even if the arbitration provision in the Agreement did not comply with the requirements of the UAA,[5] it was subject to the FAA as the transaction involved interstate commerce. Specifically, Brentwood Homes claimed the Agreement "on its face involves interstate commerce" as it provides that the Seller will purchase a warranty from 2–10 HBW Warranty,[6] or such other national warranty, and that claims would be submitted to the East Region of 2–10 HBW, which is located in Tucker, Georgia. Additionally, Brentwood Homes supplemented its motion with affidavits from Bradley and Edward M. Terry, who was the Vice–President of Brentwood Homes on January

---

4. The second page of the Agreement also contained the following statement: "THIS CONTRACT IS SUBJECT TO MANDATORY BIND-ING ARBITRATION PURSUANT TO THE SOUTH CAROLINA or NORTH CAROLINA UNIFORM ARBITRATION ACT, WHICHEVER IS APPLICABLE."

5. *See* S.C.Code Ann. § 15–48–10(a) (2005) ("Notice that a contract is subject to arbitration pursuant to this chapter shall be typed in under-lined capital letters, or rubber-stamped prominently, on the first page of the contract and unless such notice is displayed thereon the contract shall not be subject to arbitration.").

6. Section 14C of the Agreement provides that the "2–10 HBW Warranty includes a provision requiring all disputes that arise under the 2–10 HBW Warranty to be submitted to binding arbitration."

31, 2007.[7] Bradley's affidavit established that the home purchase was financed by a North Carolina branch of JPMorgan Chase Bank & Co. In his affidavit, Terry attested that Brentwood Homes "used subcontractors, materials and suppliers from outside of the State of South Carolina" in the construction of Bradley's home.

At the hearing before the circuit court, Bradley initially opposed the motion to compel arbitration on the ground Brentwood Homes waived the right to assert the affirmative defense due to its delay in responding to discovery requests. Regarding the merits, Bradley claimed the arbitration clause in the Agreement did not satisfy the statutory requirements of the UAA as it was not on the first page of the Agreement and was not identified by capital letters and underlining. Alternatively, Bradley asserted the Agreement was not subject to the FAA because it was "just a general contract to purchase and sell the home" and, thus, did not involve interstate commerce. Bradley objected to Brentwood Homes' reliance on Terry's affidavit to support its claim that the transaction involved interstate commerce as Terry had no direct involvement with the home purchase. At the conclusion of the hearing, the court orally denied the motion to stay the proceedings and compel arbitration.

By written order, the court found the Agreement did not comply with the statutory requirements of the UAA. In turn, the court assessed whether the Agreement was subject to the FAA. In making this determination, the court considered the terms of the Agreement, the pleadings and motions, the affidavits and accompanying documents, and the arguments of counsel. The court found the Agreement "does not refer to equipment and materials to be furnished from outside the state of South Carolina, nor does it list any subcontractors which were outside the confines of this state." The court also discounted Terry's affidavit based on discovery responses, which indicated that Terry did not deal directly with Bradley. Ultimately, the court held the Agreement was not subject to the FAA as Brentwood Homes had "not submitted sufficient

---

7. Terry later became President of Brentwood Homes, but resigned from this position in May 2009.

evidence to demonstrate that the transaction between [Bradley and Brentwood Homes] involved interstate commerce."

Brentwood Homes appealed the order to the Court of Appeals. This Court certified the appeal from the Court of Appeals pursuant to Rule 204(b), SCACR.

## II. Discussion

### A.

We begin our analysis with a general discussion of our appellate courts' interpretation and application of the FAA.

"Arbitrability determinations are subject to *de novo* review." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 22, 644 S.E.2d 663, 667 (2007). "Nevertheless, a circuit court's factual findings will not be reversed on appeal if any evidence reasonably supports the findings." *Id.*

Brentwood Homes concedes the Agreement does not meet the technical requirements of section 15–48–10(a) of the UAA as the arbitration provision is not underlined and does not appear on the first page of the contract. This concession, however, is not dispositive. Because an application of the South Carolina law would have rendered the parties' arbitration agreement completely unenforceable, consideration of the applicability of the FAA is required. The FAA is intended to ensure that arbitration will proceed in the event a state law would have preclusive effect on an otherwise valid arbitration agreement. *See Marmet Health Care Ctr., Inc. v. Brown,* —— U.S. ——, ——, 132 S.Ct. 1201, 1203, 182 L.Ed.2d 42 (2012) ("[W]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." (quoting *AT & T Mobility LLC v. Concepcion,* —— U.S. ——, 131 S.Ct. 1740, 1747, 179 L.Ed.2d 742 (2011))); *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (stating that "the federal policy [of the FAA] is simply to ensure the enforceability, according to their terms, of private agreements to arbitrate").

Thus, although the parties were free to agree that our state arbitration act would apply, the FAA would preempt an application of our state law to the extent it invalidated the

arbitration agreement, if interstate commerce is involved. *See Zabinski v. Bright Acres Assocs.*, 346 S.C. 580, 592, 553 S.E.2d 110, 116 (2001) ("While the parties may agree to enforce arbitration agreements under state rules rather than FAA rules, the FAA will preempt any state law that completely invalidates the parties' agreement to arbitrate."); *Munoz v. Green Tree Fin. Corp.*, 343 S.C. 531, 539 n. 2, 542 S.E.2d 360, 363 n. 2 (2001) ("State law was therefore preempted *to the extent it would have invalidated the arbitration agreement. The parties to a contract are otherwise free to agree that our state Arbitration Act will apply and this agreement shall be enforceable even if interstate commerce is involved.*" (second emphasis added)); *Soil Remediation Co. v. Nu–Way Envtl., Inc.*, 323 S.C. 454, 476 S.E.2d 149 (1996) (holding that FAA displaced South Carolina notice-requirement statute, which would have precluded arbitration, where parties agreed to arbitration and the transaction involved interstate commerce).

■ The FAA provides: "A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. Therefore, in order to activate the application of the FAA, the commerce involved in the contract must be interstate or foreign. 2 S.C. Jur. *Arbitration* § 6 (Supp.2012) ("Interstate commerce is a necessary basis for application of the federal act, and a contract or agreement not so predicated must be governed by state law. To activate application of the federal act, the commerce involved in the contract must be interstate or foreign.").

■ "The United States Supreme Court has held that the phrase 'involving commerce' is the same as 'affecting commerce,' which has been broadly interpreted to mean Congress intended to utilize its powers to regulate interstate commerce to its full extent." *Blanton v. Stathos*, 351 S.C. 534, 540 570 S.E.2d 565, 568 (Ct.App.2002) (citing *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995)). "Congress' Commerce Clause power 'may be exercised in individual cases without showing any specific effect

upon interstate commerce' if in the aggregate the economic activity in question would represent 'a general practice ... subject to federal control.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (quoting *Mandeville Island Farms, Inc. v. Am. Crystal Sugar Co.*, 334 U.S. 219, 236, 68 S.Ct. 996, 92 L.Ed. 1328 (1948)). "Despite this expansive interpretation of the FAA, the FAA does not reflect a congressional intent to occupy the entire field of arbitration." *Zabinski*, 346 S.C. at 591, 553 S.E.2d at 115–16 (citing *Volt*, 489 U.S. at 478, 109 S.Ct. 1248).

 "To ascertain whether a transaction involves commerce within the meaning of the FAA, the court must examine the agreement, the complaint, and the surrounding facts." *Id.* at 594, 553 S.E.2d at 117. "Our courts consistently look to the essential character of the contract when applying the FAA." *Thornton v. Trident Med. Ctr., LLC*, 357 S.C. 91, 96, 592 S.E.2d 50, 52 (Ct.App.2003) (finding it was proper to "focus upon what the terms of the contract specifically require for performance in determining whether interstate commerce [was] involved"). "There is a strong presumption in favor of the validity of arbitration agreements because of the strong policy favoring arbitration." *Towles v. United HealthCare Corp.*, 338 S.C. 29, 37, 524 S.E.2d 839, 844 (Ct.App.1999).

**B.**

As an initial matter, Brentwood Homes takes issue with the circuit court's decision regarding Terry's affidavit. Specifically, Brentwood Homes contends that the court did not consider Terry's affidavit. We find this contention to be without merit as the court did in fact consider Terry's affidavit as it noted in the order that it reviewed "the affidavits submitted at [the] hearing and attachments thereto."

**C.**

 Turning to our assessment of whether the transaction involved interstate commerce, we must examine the terms of the Agreement, the Complaint, and the surrounding facts, which includes the affidavits of Terry and Bradley as well as accompanying financial documentation.

Based on this evidence, Brentwood Homes claims it established that the arbitration provision in the Agreement is enforceable under the FAA as the transaction involved interstate commerce. In support of this claim, Brentwood Homes relies on the following: (1) the terms of the Agreement, which specify that a national warranty company will be used to provide a structural warranty for Bradley's home and that any claims under the warranty will be submitted to an office in Georgia; (2) Terry's affidavit, which establishes that Bradley's residence was constructed using materials, subcontractors, and suppliers from outside of South Carolina; and (3) Bradley's affidavit, which indicates that he received financing for the home purchase from a North Carolina lender.

The analysis of this issue necessarily involves a discussion of the historical intrastate character of real estate transactions. Beginning in 1994, this Court recognized the unique nature of real estate transactions when it issued its decision in *Mathews v. Fluor Corp.*, 312 S.C. 404, 440 S.E.2d 880 (1994), *overruled on other grounds by Munoz v. Green Tree Financial Corp.*, 343 S.C. 531, 539 n. 3, 542 S.E.2d 360, 363 n. 3 (2001) (overruling *Mathews* "to the extent it considered whether the parties contemplated interstate commerce as a factor in determining if the FAA applied"). In *Mathews*, this Court held that interstate commerce was not involved in a contract for the sale of a commercial building located in South Carolina to out-of-state parties even though, incidental to the sale, the parties utilized the services of a North Carolina engineer and procured financing from a Pennsylvania lender. *Id.* at 407, 440 S.E.2d at 881. In so ruling, the Court found the transaction was outside the scope of the FAA because it was "unable to discern from the evidence presented whether the contract *required* respondent to administer anything related to interstate commerce." *Id.* at 407, 440 S.E.2d at 882.

This Court has continued to adhere to the view that the development of real estate is an inherently intrastate transaction. *See Zabinski*, 346 S.C. at 595, 553 S.E.2d at 117–18 ("The development of land within South Carolina borders is the quintessential example of a purely intrastate activity.").

Because the precise question presented in the instant case has not yet been addressed by our appellate courts, we have

looked to other jurisdictions for guidance. We find the case of *Saneii v. Robards,* 289 F.Supp.2d 855 (W.D.Ky.2003) to be instructive. In *Saneii,* the purchasers of a home in Kentucky brought a claim alleging the home vendors fraudulently induced them into the contract to purchase the home by misrepresenting and concealing defects. *Id.* at 857. The sales and purchase agreement contained a binding arbitration clause generally used by the Kentucky Real Estate Commission. *Id.* The purchasers argued that the arbitration clause was not enforceable under Kentucky law, which excludes from arbitration issues involving a determination of whether the making of the agreement itself involved fraud. *Id.* at 858. The district court was left to determine whether the FAA preempted this state law. *Id.* Specifically, the court considered whether the contract for the sale of residential real estate is " 'a transaction involving interstate commerce' within the meaning of § 2 of the FAA." *Id.*

Ultimately, the court concluded that "a residential real estate sales contract does not evidence or involve interstate commerce." *Id.* at 860. In reaching this conclusion, the court explained:

> Notwithstanding its congenial effects on interstate commerce, the sale of residential real estate is inherently intrastate. Contracts strictly for the sale of residential real estate focus entirely on a commodity—the land—which is firmly planted in one particular state. The citizenship of immediate parties (the buyer and the seller) or their movements to or from that state are incidental to the real estate transaction. Those movements are not part of the transaction itself. All of the legal relationships concerning the land are bound by state law principles. Single residential real estate transactions of this type have no substantial or direct connection to interstate commerce. For all these reasons, logic suggests that such transactions are not among those considered as involving interstate commerce.
>
> To characterize a residential real estate [transaction] as involving interstate commerce under these circumstances would actually promote a lack of uniformity in the law, which is exactly contrary to one of the FAA's stated purpose. If the FAA applied to out-of-state purchasers of Kentucky real estate, different rules would apply in that

considerable volume of transactions concerning property here. Applying Kentucky law to all Kentucky real estate transactions creates a more uniform and, therefore, a more equitable body of law.

*Id.* at 858–59 (footnote omitted); *see also Garrison v. Palmas Del Mar Homeowners Ass'n,* 538 F.Supp.2d 468, 473 (D.P.R. 2008) (discussing *Mathews* and *Saneii* and stating, "The FAA generally does not apply to residential real estate transactions that have no substantial or direct connection to interstate commerce, regardless of whether said transactions involve out-of-state purchasers.").

Applying the above-outlined principles to the facts of the instant case, we find the circuit court correctly determined that the Agreement was not subject to the FAA. We agree with the circuit court's conclusion that Brentwood Homes failed to satisfy its burden of proof as none of the factors relied upon to establish the involvement of interstate commerce negate the intrastate nature of the sale and purchase of residential real estate.

Initially, as its title reflects, the Home Purchase Agreement specifically provides that Bradley agreed to purchase a completed dwelling rather than contract for the construction of a dwelling. Notably, the provisions of the Agreement providing for "New Construction," "House Plan," "Options," and "Color Selection," are eliminated as "N/A" and were not signed by Bradley. Therefore, we find Terry's affidavit is inapposite as his attestation that out-of-state materials, suppliers, and subcontractors were used for the construction of the residence has no bearing on the purchase of the completed dwelling.[8]

8. We emphasize that had the Agreement actually encompassed the construction of the residence, it would have been subject to the FAA as our appellate courts have consistently recognized that contracts for construction are governed by the FAA. *See, e.g., Episcopal Hous. Corp. v. Fed. Ins. Co.,* 269 S.C. 631, 640, 239 S.E.2d 647, 652 (1977) (holding that performance required under a contract for the construction of an eighteen-story building involved interstate commerce because "[i]t would be virtually impossible to construct" such a building "with materials, equipment and supplies all produced and manufactured solely within the State of South Carolina"); *New Hope Missionary Baptist Church v. Paragon Builders,* 379 S.C. 620, 626–27, 667 S.E.2d 1, 4 (Ct.App.2008) (finding contract for construction of a church pertained to a transaction "involving interstate commerce due to the nature of the

Furthermore, neither the inclusion of the national warranty nor Bradley's use of out-of-state financing converted the intrastate transaction into one involving interstate commerce. Significantly, Bradley did not name the national warranty company as a defendant in his lawsuit as his claims involved fraud, negligence, and breach of an implied warranty and not a claim under the 2–10 HBW Warranty. Bradley's use of a North Carolina branch of JPMorgan Chase Bank & Co., a national financial institution, also did not bring the sale of the home within interstate commerce as the use of this lender was tangential to the performance of the Agreement. *See Saneii*, 289 F.Supp.2d at 859 n. 3 (noting that the "tangential effect" of a home buyer obtaining financing from a bank, which happened to participate interstate commerce, was not enough to bring the sale of a home within interstate commerce and the FAA).

Finally, if the utilization of out-of-state financing or a national warranty was sufficient to constitute interstate commerce, then every transaction that involved these ancillary factors would be subject to the FAA. We believe a decision to this effect would eviscerate the well-established real estate exception to the FAA.

Based on the foregoing, we conclude that Brentwood Homes failed to offer sufficient evidence that the transaction involved interstate commerce to subject the Agreement to the FAA.[9]

### III. Conclusion

Because the essential character of the Agreement was strictly for the purchase of a completed residential dwelling and not the construction, we find the FAA does not apply as these types of transactions have historically been deemed to involve intrastate commerce. Furthermore, the existence of the national warranty and Bradley's use of out-of-state financ-

---

construction project" and the builders' affidavit swearing the project would involve businesses and supplies from outside of South Carolina).

9. In light of our holding, we need not address Bradley's argument that Brentwood Homes waived its right to assert its claim for arbitration. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999) (providing that an appellate court need not address remaining issues when disposition of a prior issue is dispositive).

ing did not negate the intrastate nature of the transaction. Accordingly, we affirm the circuit court's order denying Brentwood Homes' motion to stay the proceedings and compel arbitration as Brentwood Homes failed to offer sufficient evidence that the transaction involved interstate commerce to subject the Agreement to the FAA.

**AFFIRMED.**

TOAL, C.J., PLEICONES, KITTREDGE and HEARN, JJ., concur.