Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
07/05/2019 09:05 AM CDT

John A. Garlock and John H. Garlock,
appellees, v. 3DS Properties, L.L.C.,
a Nebraska limited liability
company, et al., appellants.

___ N.W.2d ___

Filed July 5, 2019.    No. S-18-336.

1. **Arbitration and Award: Appeal and Error.** In reviewing a decision
to vacate, modify, or confirm an arbitration award, an appellate court is
obligated to reach a conclusion independent of the trial court's ruling as
to questions of law. However, the trial court's factual findings will not
be set aside on appeal unless clearly erroneous.
2. **Arbitration and Award: Federal Acts: Contracts.** Arbitration in
Nebraska is governed by the Federal Arbitration Act if it arises from
a contract involving interstate commerce; otherwise, it is governed by
Nebraska's Uniform Arbitration Act. When determining whether an arbi-
tration clause is governed by the Uniform Arbitration Act or the Federal
Arbitration Act, the initial question is whether the parties' contract evi-
dences a transaction "involving commerce" as defined by the Federal
Arbitration Act.
3. **Contracts: Real Estate.** While more complex transactions may impli-
cate interstate commerce, a simple contract for the sale of residential
real estate is an inherently intrastate activity.
4. **Arbitration and Award: Waiver.** As a general rule, voluntary participa-
tion in an arbitration proceeding on the merits of a dispute will result in
a waiver or forfeiture of the right to later challenge arbitrability. In other
words, a party may not voluntarily submit a dispute to arbitration and,
after an unfavorable result, petition the courts to find the dispute was
not arbitrable.
5. **Arbitration and Award.** If a party clearly and explicitly makes known
to the arbitrator, prior to a hearing on the merits, that he or she objects
to the arbitrability of an issue, that party's participation in the arbitration
will not preclude a later judicial challenge to arbitrability.

6. \_\_\_\_. A party who voluntarily participates in an arbitration proceeding without raising objection may not thereafter rely on Neb. Rev. Stat. § 25-2613(a)(5) (Reissue 2016) to support judicial vacatur.

7. \_\_\_\_. When a party seeks to confirm an arbitration award pursuant to the Uniform Arbitration Act, a court must confirm that award unless a party has sought to vacate, modify, or correct the award and grounds for such vacation, modification, or correction exist.

8. \_\_\_\_. Neb. Rev. Stat. § 25-2612 (Reissue 2016) of the Uniform Arbitration Act does not allow for the exercise of discretion by the court when a request of confirmation is made where there has been no application for vacation or modification.

Appeal from the District Court for Douglas County: James T. Gleason, Judge. Reversed and remanded with directions.

Douglas W. Ruge for appellant Ryan Basye.

William J. Bianco, of Bianco Stroh, L.L.C., for appellants 3DS Properties, L.L.C., and Keith Donner.

Justin D. Eichmann and Sarah E. Cavanagh, of Houghton, Bradford & Whitted, P.C., L.L.O., for appellees.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg JJ.

Stacy, J.

The purchasers of a home filed suit against the sellers, alleging several defects in the home had been concealed. The district court stayed the lawsuit to permit either mediation or arbitration as provided in the purchase agreement, and the parties proceeded to arbitration. After an arbitration award was entered in favor of the sellers, the purchasers moved the district court to vacate the award, and the sellers moved to confirm it. The district court vacated the award, and the sellers filed this appeal. We reverse, and remand with directions to confirm the arbitration award.

BACKGROUND

On or about March 26, 2015, John A. Garlock and John H. Garlock entered into a purchase agreement with 3DS

Properties, L.L.C. (3DS), for the sale of a home in Omaha, Nebraska. The sellers' disclosure statement had been signed by 3DS member Keith Donner, and the home was listed by Ryan Basye, a licensed real estate agent in Nebraska. After closing, the Garlocks discovered problems with the home.

## Lawsuit

On May 13, 2016, the Garlocks filed a complaint in the Douglas County District Court against 3DS, Donner, and Basye, alleging multiple theories of recovery, including a violation of Neb. Rev. Stat. § 76-2,120 (Cum. Supp. 2014), fraudulent concealment, false representation, negligent misrepresentation, and breach of contract. The complaint alleged the "Seller Property Condition Disclosure," signed by Donner, misrepresented the condition of the home. In particular, the complaint alleged the disclosure statement falsely indicated that the roof did not leak, there was no damage to the roof, there was no water seepage in the basement, and there were no structural problems with the property.

Paragraph 35 of the purchase agreement was entitled "Arbitration and Mediation" and provided in relevant part:

> B. Mediation: In the event of any Dispute, any party to the Dispute may seek non-binding mediation in an attempt to resolve the dispute by giving fifteen (15) days written notice of a request for such mediation to all other parties to the Dispute. . . .

> C. Arbitration: Any Dispute that is not resolved by informal settlement or mediation shall be resolved exclusively by binding arbitration. Such arbitration shall be administered by the American Arbitration Association and shall be conducted according to the American Arbitration Association's Commercial Rules — Real Estate Industry Arbitration Rules (Including a Mediation Alternative). The arbiter(s) shall apply Nebraska substantive and procedural law to the arbitration proceeding. Arbitration shall be commenced by written demand made by any one or more of the parties to the Dispute given to all other

parties of the Dispute. . . . The prevailing party shall be
entitled to costs and fees of the arbitration and, in the
discretion of the arbitrator who shall take into account
the relative merits of the opponent's case, the arbiter may
award attorney's fees and arbitration costs to the prevail-
ing party.

(Emphasis omitted.) Above the signature line in the purchase
agreement appeared a sentence which read: "This contract
contains an arbitration provision which may be enforced by the
parties." (Emphasis omitted.) This sentence appeared in font
which was bolded and capitalized, but was not underlined.

On July 5, 2016, 3DS and Donner jointly moved to dismiss
the lawsuit because the purchase agreement required that "any
dispute not resolved by informal settlement or mediation shall
be resolved exclusively by binding arbitration." Shortly there-
after, Basye filed a motion seeking to "[d]ismiss or [s]tay" the
lawsuit for the same reason.

A hearing was held on the motions, but our record does not
include a transcription of that proceeding. After the hearing, the
court entered an order staying the case and deferring ruling on
the motions to dismiss. The court's order, entered September
21, 2016, did not expressly order either mediation or arbitra-
tion, but instead stayed the lawsuit "until such time as the par-
ties have either entered into a form of mediation or by agree-
ment . . . submit[ted] to arbitration as set forth in Paragraph
C of Section 35." No appeal was taken from this order.[1]
Thereafter, the Garlocks filed a written demand for expedited
arbitration, and all parties began the arbitration process.

Approximately 6 months later, on March 22, 2017, the
Garlocks filed what they styled a "Motion for Rehearing"
asking the court to reconsider its order of September 21,
2016, staying the lawsuit. In support, the Garlocks alleged
for the first time that the arbitration provision in the purchase

---

[1] See *Kremer v. Rural Community Ins. Co.*, 280 Neb. 591, 788 N.W.2d
538 (2010) (order compelling arbitration or staying judicial proceedings
pending arbitration is final order).

agreement violated Neb. Rev. Stat. § 25-2602.02 (Reissue 2016) of Nebraska's Uniform Arbitration Act (UAA)[2] because certain language was not underlined. In response, 3DS and Donner filed another motion to dismiss, again asserting that the purchase agreement required the parties' dispute to be settled by binding arbitration.

On May 16, 2017, a hearing was held on all pending motions and evidence was adduced. Among the exhibits offered were affidavits of the Garlocks in which they averred they had initiated arbitration proceedings, but were dissatisfied with (1) how costly and complex the arbitration process was, (2) the length of time the arbitration was taking, (3) the fact that they would "still need the services of an attorney" during the arbitration, and (4) the discovery limitations they had encountered in arbitration. The Garlocks' affidavits stated that if they had known these things in advance, they would not have agreed to arbitrate.

After receiving evidence and hearing argument, the court took all motions under advisement. At the time of the hearing, all parties were aware that an arbitration hearing was set for June 12 and 13, 2017, in Omaha. However, no party advised the court of this fact, and no party asked to stay or enjoin the imminent arbitration hearing.[3]

Instead, the arbitration took place as scheduled and was completed before the district court ruled on either the Garlocks' motion to reconsider or the motion to dismiss filed by 3DS and Donner. All parties to the district court action participated in the arbitration hearing, and all were represented by counsel.

## Arbitration

After the Garlocks filed a written demand for expedited arbitration, the parties selected an arbitrator and the proceedings

---

[2] Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 2016).

[3] See § 25-2603(b) ("[o]n application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate").

were expanded to include discovery and a multiday hearing. The parties agreed to have a court reporter present for the arbitration hearing, which was held in Omaha at an agreed-upon location.

All parties consented to participate in the arbitration and agreed to be bound by it. Before the arbitration hearing, Basye's attorney sent an email addressed to the arbitration company and the Garlocks' attorney, stating: "By this email, my client consents and agrees to be bound by the arbitration. This is contingent on a substantially similar representation by the other parties." At the start of the arbitration hearing on June 12, 2017, the Garlocks' attorney asked the arbitrator to confirm, on the record, each party's consent to arbitrate. The arbitrator then individually confirmed the parties' agreement to proceed with the arbitration and to be bound by it. During the 2-day arbitration hearing that followed, more than 70 exhibits were offered and 12 witnesses testified.

An arbitration award was issued July 14, 2017. The award began by addressing procedural issues and expressly stated that before the arbitration hearing, and again during the hearing, a question was raised whether all parties had agreed to be bound by arbitration. The arbitrator found that "all Respondents agreed in writing to waive any challenge to the binding nature of the arbitration proceedings" and that "[t]he Parties also made the same representation on the record before the close of [the] Hearing." Additionally, the arbitrator acknowledged he had been advised that the Garlocks had "a pending motion before the state court regarding reconsideration of its remand of this matter to arbitration" but that they had "agreed to move forward with the arbitration." The arbitrator further stated: "No motion for continuance was made or pending at the time of [the arbitration] Hearing and no court order presented."

The arbitrator's award then discussed the merits of the Garlocks' claims and found there was "no credible evidence to support" any of the Garlocks' claims against 3DS, Donner, or Basye. The arbitrator ordered the Garlocks to pay the costs of

the arbitration and ordered each party to pay their own attorney fees.

## Competing Motions to Vacate
## and Confirm Arbitration

On August 11, 2017, the Garlocks filed, in the district court action, an "Application to Vacate" the arbitration award. The motion asserted three grounds for vacating the award: (1) The arbitrator was partial to the defendants, (2) the award was contrary to Nebraska public policy, and (3) the arbitrator refused to postpone the arbitration hearing despite a pending motion for rehearing in the district court action.

On September 12, 2017, 3DS and Donner filed another motion to dismiss, this time alleging the lawsuit should be dismissed because binding arbitration had been completed by the parties. Thereafter, on November 14, 3DS and Donner filed a motion seeking judicial confirmation of the arbitration award.

On November 17, 2017, a hearing was held before the district court on all pending motions. Evidence was adduced, and the matter was taken under advisement.

## Order Finding Arbitration Void
## and Vacating Award

In an order entered March 8, 2018, the district court noted that while the motion for rehearing of its order staying the lawsuit was under advisement, "the parties proceeded with arbitration." It recognized that the Garlocks were now seeking to vacate the arbitration award, while 3DS and Donner were seeking to confirm it.

The court first took up the motion for rehearing and found that the arbitration provision in the purchase agreement was unenforceable, citing § 25-2602.02 and reasoning:

> [T]he language "This contract contains [an] arbitration provision which may be enforced by the parties" was not underlined as required by Statute. Although the language was set forth in bold face type, this does not comply with

[§ 25-2602.02] and our Court has required strict compliance with this Statute in order to enforce [an] arbitration clause. [Citation omitted.] This failure is fatal to the enforcement of the arbitration clause.

The court also stated: "Because this court is of the opinion that the motion for rehearing should be granted, the Court must determine that the arbitration proceedings which the parties involved themselves in while this matter was under advisement, are a nullity."

The court then sustained the Garlocks' motion to vacate the arbitration award, reasoning that the parties "would not have participated in arbitration but for the exigent circumstances and for that reason, this Court determines that the arbitration itself was void." The court also ordered that the costs of the arbitration be reallocated so that the plaintiffs and defendants were each responsible for one-half of the costs. Finally, the court denied both the motion to dismiss and the motion to confirm the arbitration award.

### Various Motions After Order
### Vacating Arbitration Award

In response to the March 8, 2018, order vacating the arbitration award, the defendants filed several motions on March 12, including a motion to reconsider and a motion to alter or amend. The motion to reconsider alleged that because the parties had "willingly participated" in arbitration and agreed to be bound by the results, it was immaterial that the arbitration clause in the purchase agreement did not comply with § 25-2602.02 of the UAA. The motion also alleged there was no evidence to support the court's finding that arbitration took place only due to "exigent circumstances." The motion to alter or amend was filed only by Basye. He generally alleged the court had improperly applied the UAA to invalidate the arbitration agreement when the agreement was governed by the Federal Arbitration Act (FAA).[4]

---

[4] 9 U.S.C. §§ 1 to 16 (2012).

In an order entered March 20, 2018, the court overruled the motion to reconsider and the motion to alter or amend. 3DS, Donner, and Basye filed a joint notice of appeal on March 31, appealing from the orders of March 8 and 20.

## ASSIGNMENTS OF ERROR

3DS, Donner, and Basye assign, restated and consolidated, that the district court erred by (1) implicitly finding that the FAA did not apply, (2) finding the arbitration provision in the purchase agreement was unenforceable under the UAA, (3) vacating the arbitration award, and (4) failing to confirm the arbitration award.

## STANDARD OF REVIEW

[1] In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law.[5] However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous.[6]

## ANALYSIS

### Applicable Law

[2] Before addressing the arbitration issues raised by the parties on appeal, we consider whether our analysis is governed by the UAA or the FAA. Arbitration in Nebraska is governed by the FAA if it arises from a contract involving interstate commerce; otherwise, it is governed by the UAA.[7] When determining whether an arbitration clause is governed by the UAA or the FAA, the initial question is whether the parties' contract evidences a transaction "involving commerce" as defined by the FAA.[8]

---

[5] *Ronald J. Palagi, P.C. v. Prospect Funding Holdings*, 302 Neb. 769, 925 N.W.2d 344 (2019); *State v. Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009).

[6] *Id.*

[7] *Ronald J. Palagi, P.C., supra* note 5.

[8] *Id.*

The U.S. Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce"—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.[9] As such, we have held the FAA "'embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause.'"[10]

We applied this reasoning in *Wilczewski v. Charter West Nat. Bank*[11] to hold that an arbitration provision in a purchase agreement for the sale of residential property was governed by the FAA because the residential property was being sold by a bank as part of a foreclosure. We reasoned:

> The nationwide impact of residential real estate lending was a central focus of the Housing and Economic Recovery Act of 2008, which Congress passed in response to a national financial crisis. Generally, residential real estate lending affects interstate commerce. And the sale to the [buyers] was merely the last step of [the selling bank's] loan, foreclosure, acquisition of title, and resale of its security.[12]

But in *Wilczewski*, we confined our holding to the foreclosure sale at issue, which was part of a "comprehensive practice or activity of lending money on residential real estate, enforcing liens, acquiring title, and reselling."[13] And even though the commercial transaction in *Wilczewski* culminated in the sale of a residential home, we distinguished it from transactions that "merely addressed individual sales of residential

---

[9] *Wilczewski v. Charter West Nat. Bank*, 295 Neb. 254, 889 N.W.2d 63 (2016).

[10] *Id.* at 260, 889 N.W.2d at 68.

[11] *Wilczewski, supra* note 9.

[12] *Id.* at 263, 889 N.W.2d at 69-70.

[13] *Id*. at 264, 889 N.W.2d at 70.

real estate"[14] and left for another day the question of "whether the FAA applies to a simple contract for the sale of residential real estate."[15]

3DS, Donner, and Basye argue that the FAA applies to the purchase agreement in this case, because "[i]nstruments of interstate commerce were utilized."[16] They point to the use of the internet to advertise the property and the purchase of appliances when preparing the house for sale. But in *Wilczewski*, we held that such tangential details should not control.[17] Rather, we determined the proper inquiry is whether the "program or activity" at issue affects interstate commerce.[18]

[3] In *Wilczewski*, interstate commerce was affected because the sale was part of a program or activity of loaning money secured by residential real estate. But here, the activity involved nothing more than a simple contract for the sale of residential real estate. Although there was evidence that 3DS and Donner are engaged in the business of acquiring and reselling residential real estate for profit, we find this case presents "a simple contract for the sale of residential real estate."[19] And, while more complex transactions may implicate interstate commerce, we hold that a simple contract for the sale of residential real estate is an inherently intrastate activity.[20] On the facts of this case, the UAA governs the purchase agreement. The district court did not err in applying

---

[14] *Id.*

[15] *Id.*

[16] Brief for appellant Basye at 25.

[17] *Wilczewski, supra* note 9.

[18] *Id*. at 264, 889 N.W.2d at 70.

[19] *Id.*

[20] See, *Garrison v. Palmas Del Mar Homeowners Ass'n., Inc.*, 538 F. Supp. 2d 468 (2008); *Saneil v. Robards*, 289 F. Supp. 2d 855 (W.D. Ky. 2003); *SI V, LLC v. FMC Corp.*, 223 F. Supp. 2d 1059 (N.D. Cal. 2002); *Cecala v. Moore*, 982 F. Supp. 609 (N.D. Ill. 1997); *Bradley v. Brentwood Homes, Inc.*, 398 S.C. 447, 730 S.E.2d 312 (2012).

the UAA rather than the FAA. The first assignment of error has no merit.

## Jurisdiction

Having determined the UAA governs the purchase agreement in this case, we next address our jurisdiction to consider this interlocutory appeal. It is the duty of an appellate court to determine whether it has jurisdiction over the matter before it, even where no party has raised the issue.[21]

Section 25-2620 of the UAA provides:

(a) An appeal may be taken from:

(1) An order denying an application to compel arbitration made under section 25-2603;

(2) An order granting an application to stay arbitration made under subsection (b) of section 25-2603;

(3) An order confirming or denying confirmation of an award;

(4) An order modifying or correcting an award;

(5) An order vacating an award without directing a rehearing; or

(6) A judgment or decree entered pursuant to the provisions of the [UAA].

(b) The appeal shall be taken in the manner and to the same extent as from orders or judgments in a civil action.

This appeal was taken from an order that denied confirmation of an arbitration award and vacated an award without directing a rehearing. We therefore have appellate jurisdiction pursuant to § 25-2620(a)(3) and (5), and it is unnecessary to consider whether the orders appealed from are also final, appealable orders under Neb. Rev. Stat. § 25-1902 (Reissue 2016).[22]

## Waiver of Challenge to Arbitrability

The trial court's order of March 8, 2018, and the parties' briefs on appeal focus primarily on the enforceability of the

---

[21] See *McCullough v. McCullough*, 299 Neb. 719, 910 N.W.2d 515 (2018).

[22] See, generally, *Kremer, supra* note 1.

arbitration provision in the purchase agreement and the arbitrability of the parties' dispute. But given the procedural posture of this case and the parties' agreement on the record before the arbitrator to proceed with arbitration of their dispute, we first address whether the Garlocks' challenge to arbitrability has been waived in this case.

After the litigation was stayed by the district court to permit mediation or arbitration—an order from which no party appealed[23]—all parties voluntarily submitted to and completed binding arbitration. And they did so despite a pending motion for rehearing before the district court that ordered the stay. The arbitrator found that "all Respondents agreed in writing to waive any challenge to the binding nature of the arbitration proceedings" and that "[t]he Parties also made the same representation on the record before the close of [the] Hearing."

Nebraska's appellate courts have not yet addressed whether, or under what circumstances, a party's participation in an arbitration proceeding without objection may result in a waiver of that party's right to subsequently challenge arbitrability under state law. But many other states and several U.S. Circuit Courts of Appeal have considered the question.[24]

[4,5] As a general rule, these courts hold that voluntary participation in an arbitration proceeding on the merits of a dispute will result in a waiver or forfeiture of the right to later challenge arbitrability.[25] In other words, a party may not voluntarily submit a dispute to arbitration and, after an unfavorable result, petition the courts to find the dispute was not

---

[23] See *id.*

[24] See Annot., Participation in Arbitration Proceedings as Waiver of Objections to Arbitrability Under State Law, 56 A.L.R.5th 757 (1998).

[25] *Id.*, §§ 2 and 3. See 21 Richard A. Lord, A Treatise on the Law of Contracts by Samuel Williston § 57:102 (4th ed. 2017) ("one who voluntarily and without objection participates in arbitration proceedings waives the right to object thereafter to the arbitrability of previously decided issues").

arbitrable.[26] If, however, a party clearly and explicitly makes known to the arbitrator, prior to a hearing on the merits, that he or she objects to the arbitrability of an issue, that party's participation in the arbitration will not preclude a later judicial challenge to arbitrability.[27]

The principle that a party may waive arbitrability by not timely objecting has been effectively codified under the UAA, which authorizes judicial vacatur of an arbitration award when "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 25-2603, *and the party did not participate in the arbitration hearing without raising the objection*[.]"[28]

In the instant case, the conduct of the Garlocks resulted in a waiver of the right to challenge arbitrability. After the district court stayed the lawsuit pending either mediation or arbitration, the Garlocks initiated arbitration proceedings. Six months later, the Garlocks asked the district court to reconsider its stay, but they did not seek a judicial stay of the ongoing arbitration proceedings under § 25-2603(b) despite the fact that the arbitration hearing was imminent. Instead, the Garlocks voluntarily proceeded with the arbitration hearing and never raised an objection to arbitrability before the arbitrator. To the contrary, they expressly agreed on the record to be bound by the decision of the arbitrator, and they asked the arbitrator to secure similar agreements on the record from all other parties, which he did. Thus, while it is possible for a party to participate in

---

[26] See, e.g., *Howard Univ. v. Metro. Campus Police Officer's Un.*, 512 F.3d 716 (D.C. Cir. 2008); *Fortune, Alsweet & Eldridge, Inc. v. Daniel*, 724 F.2d 1355 (9th Cir. 1983); *Bacon Const. Co. v. Dept. of Public Works*, 294 Conn. 695, 987 A.2d 348 (2010); *First Health Group Corp. v. Ruddick*, 393 Ill. App. 3d 40, 911 N.E.2d 1201, 331 Ill. Dec. 971 (2009).

[27] See, e.g., *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003); *AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000); *Azcon Const. Co. v. Golden Hills Resort*, 498 N.W.2d 630 (S.D. 1993).

[28] § 25-2613(a)(5) (emphasis supplied).

an arbitration and still preserve an objection to arbitrability, the Garlocks did not do so here.

We find, on this record, that all parties voluntarily submitted their dispute to arbitration without objecting to arbitrability, and thereby waived the right to seek a judicial determination that the dispute was not arbitrable.

### Court Erred in Ruling on Motion for Rehearing

In their second assignment, 3DS, Donner, and Basye argue the district court erred when it found the arbitration provision in the purchase agreement was unenforceable. Given the context and timing of the court's finding in that regard, we agree the court erred.

The court's finding on arbitrability was not made until after the parties had agreed to be bound by the arbitrator's decision, had participated in the arbitration hearing, and had received the arbitrator's award. Fully aware that the parties' dispute had already been arbitrated, and with the complete record of the arbitration proceeding offered into evidence on the competing motions to vacate and confirm the arbitration award, the court nevertheless granted an earlier motion for rehearing and then concluded, after the fact, that the entire arbitration was a nullity because the arbitration provision in the purchase agreement was unenforceable under the UAA.

But by the time the court ruled on the motion for rehearing, the parties had already consented to, and completed, arbitration. Once the arbitration award was entered, challenges to that award—including claims that there was no enforceable arbitration agreement—were properly taken up in the context of the Garlocks' motion to vacate the award. Thus, instead of ruling on a motion for rehearing that could no longer provide the relief sought, the district court should have proceeded directly to consideration of the Garlocks' application to vacate the arbitration award and the competing motion to confirm the award brought by 3DS and Donner.

Error to Vacate Award
Under § 25-2613

Section 25-2613 provides in relevant part:

(a) Upon application of a party, the court shall vacate an award when:

(1) The award was procured by corruption, fraud, or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

(3) The arbitrators exceeded their powers;

(4) The arbitrators refused to postpone the hearing upon sufficient cause being shown therefor, refused to hear evidence material to the controversy, or otherwise so conducted the hearing, contrary to the provisions of section 25-2606, as to prejudice substantially the rights of a party;

(5) There was no arbitration agreement and the issue was not adversely determined in proceedings under section 25-2603, and the party did not participate in the arbitration hearing without raising the objection; or

(6) An arbitrator was subject to disqualification pursuant to section 25-2604.01 and failed, upon receipt of timely demand, to disqualify himself or herself as required by such section.

The fact that the relief was such that it could not or would not be granted by a court of law or equity is not ground for vacating or refusing to confirm the award.

The Garlocks sought to vacate the award on three grounds: (1) The arbitrator was "partial to the Defendants," (2) the award was "contrary to the public policy" of Nebraska, and (3) the arbitrator "refused to postpone" the arbitration hearing. The Garlocks' first and third grounds for vacatur are recognized in § 25-2613, and their second ground (that the award was contrary to public policy) was recognized by this court in

*State v. Henderson*[29] as a reason to refuse to enforce an arbitration award.

But at the hearing on the motion to vacate, the Garlocks did not offer evidence to support any of these three grounds. Instead, they offered only the record of the proceedings before the arbitrator and argued the question of arbitrability, claiming the "arbitration clause [in the purchase agreement] is void."

[6] As stated, § 25-2613(a)(5) authorizes vacating an arbitration award when "[t]here was no arbitration agreement and the issue was not adversely determined in proceedings under section 25-2603, *and the party did not participate in the arbitration hearing without raising the objection*[.]" Because the Garlocks voluntarily participated in the arbitration hearing without raising any objection to arbitrability, they may not now rely on § 25-2613(a)(5) to support judicial vacatur.

Without evidence to support any of the three grounds raised in the Garlocks' application, and because the Garlocks cannot rely on § 25-2613(a)(5) to support their request for judicial vacatur, it was error for the district court to vacate the arbitration award.

### Error Not to Confirm Award
### Under § 25-2612

Section 25-2612 provides:

> Within sixty days of the application of a party, the court shall confirm an award, unless within the time limits hereinafter imposed grounds are urged for vacating or modifying or correcting the award, in which case the court shall proceed as provided in sections 25-2613 [vacating an award] and 25-2614 [modifying or correcting an award].

[7,8] When a party seeks to confirm an arbitration award pursuant to the UAA, a court must confirm that award unless

---

[29] *Henderson, supra* note 5 (holding court may refuse to enforce arbitration award contrary to public policy that is explicit, well defined, and dominant).

a party has sought to vacate, modify, or correct the award and grounds for such vacation, modification, or correction exist.[30] We have stated that "§ 25-2612 does not allow for the exercise of discretion by the court when a request of confirmation is made where there has been no application for vacation or modification."[31]

Here, no party sought to modify the award, and the Garlocks' application to vacate the award was meritless. As such, it was error to overrule the application to confirm the award. Instead, the district court should have confirmed the arbitration award pursuant to § 25-2612 and then entered judgment in conformity therewith pursuant to § 25-2615. For the sake of completeness, we also note that absent a timely application to modify under § 25-2614, it was plain error for the district court to modify the arbitration award by reallocating the arbitration expenses.[32]

## CONCLUSION

For the foregoing reasons, we find the second, third, and fourth assignments of error have merit and we reverse, and remand with directions to confirm the arbitration award and to enter judgment in conformity therewith.

REVERSED AND REMANDED WITH DIRECTIONS.

---

[30] See *Drummond v. State Farm Mut. Auto. Ins. Co.*, 280 Neb. 258, 785 N.W.2d 829 (2010).

[31] *Id*. at 262, 785 N.W.2d at 833.

[32] See § 25-2611 ("[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees together with other expenses, not including counsel fees, incurred in the conduct of the arbitration shall be paid as provided in the award").